[No. B195889. Second Dist., Div. Four. May 30, 2008.]

PREMIER MEDICAL MANAGEMENT SYSTEMS, INC., et al., Plaintiffs and Appellants, v.
CALIFORNIA INSURANCE GUARANTEE ASSOCIATION et al.,
Defendants and Respondents.

COUNSEL

Riley & Reiner, Ira Reiner, Raymond L. Riley and Douglas D. Winter for Plaintiffs and Appellants.

Locke Lord Bissell & Liddell, C. Guerry Collins, William S. Davis and Conrad V. Sison for Defendant and Respondent California Insurance Guarantee Association.

Pillsbury Winthrop Shaw Pittman and John S. Poulos for Defendant and Respondent Pacific Secured Equities, Inc., dba Intercare Insurance Services.

Heggeness Sweet Simington & Patricio and Clifford D. Sweet III for Defendants and Respondents Insurance Company of the West and The Explorer Insurance Company.

Gray Duffy, John J. Duffy and Brian W. Ludeke for Defendant and Respondent HMI Associates, Inc.

Schaffer, Lax, McNaughton & Chen and John H. Horwitz for Defendant and Respondent Lehman Foods, Inc.

Roxborough, Pomerance & Nye, Michael B. Adreani and Craig Pynes for Defendant and Respondent Elite Personnel Services, Inc.

Parker, Kern, Nard & Wenzel and Richard J. Kern for Defendant and Respondent American All-Risk Loss Administrators.

## OPINION

**EPSTEIN, P. J.**—The issue in these consolidated appeals is whether awards of attorney fees were too high. The awards were made to the prevailing defendants on an anti-SLAPP (strategic lawsuit against public participation) special motion to strike pursuant to Code of Civil Procedure section 425.16 (section 425.16). In an earlier published decision, we reversed a trial court order denying the special motion to strike and remanded for an award of fees to the successful defendants. (*Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.* (2006) 136 Cal.App.4th 464 [39 Cal.Rptr.3d 43] (*Premier I*).) The present appeal is from the decision of the trial court on remand.

Appellants argue the fee awards are excessive, duplicative, and improperly include compensation for matters unrelated to the section 425.16 motion. We find no abuse of discretion on the record presented, and affirm. Since appellants abandoned the appeal as to four respondents, we dismiss the appeal as to those parties.

### FACTUAL AND PROCEDURAL SUMMARY

We take portions of this summary from our opinion in *Premier I, supra*, 136 Cal.App.4th at pages 468–472. The case originally arose in the context of the workers' compensation system. California Insurance Guarantee Association

(CIGA), The Explorer Insurance Company (Explorer), Insurance Company of the West (ICW), and other entities sought a determination by the Workers' Compensation Appeals Board (WCAB) that Premier Medical Management Systems, Inc., was improperly representing treating physicians in WCAB proceedings. They claimed it was doing so by unlawfully practicing medicine, engaging in illegal fee sharing, illegally referring business, and making improper and excessive charges. (*Premier I, supra,* 136 Cal.App.4th at p. 469.)

Premier and five affiliated physicians (collectively appellants) responded by filing a civil action against a group of workers' compensation insurers, employers, and other entities (collectively respondents)[1] alleging that respondents had engaged in anticompetitive activity in a conspiracy to contest, delay, and avoid payment of physicians bills and liens for the treatment of workers' compensation claimants. The complaint alleged causes of action for violation of the Cartwright Act (Bus. & Prof. Code, § 16720, the state antitrust statute), title 18 United States Code sections 1961, 1962(c) (RICO), Business and Professions Code section 17200, intentional interference with contractual and prospective economic advantage, negligent interference, and abuse of process. (*Premier I, supra,* 136 Cal.App.4th at pp. 470–471.) Appellants sought $15 million in compensatory damages (subject to statutory trebling), restitution, punitive damages, injunctive relief, costs, and fees. (*Id.* at p. 471.)

Some of the defendants filed joint demurrers and motions to strike portions of the complaint. Ten of the 21 defendants joined in a special motion to strike the complaint as an anti-SLAPP suit because it was based entirely on defendants' constitutional right to petition the WCAB. (*Premier I, supra,* 136 Cal.App.4th at p. 471.) The trial court denied the special motion to strike. (*Id.* at p. 472.) We reversed, finding the complaint came within section 425.16 because the gravamen of the action arose from the activity of litigating lien claims through the workers' compensation process. (136 Cal.App.4th at pp. 472–477.)

In the second step of the analysis required under section 425.16, we concluded that appellants were unable to demonstrate that their complaint was both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence they submitted was credited. (*Premier I, supra,* 136 Cal.App.4th at p. 477, citing *Navellier v.*

---

[1] Several defendants do not appear in this appeal: American Casualty Company of Reading, Pennsylvania; Headway Corporate Staffing; USA Biomass Corporation; Good Nite Inn, Inc.; Abbey Party Rents; Southwest Trails; San Fernando Valley Association; Terry Hinge Hardware Co.; Encore Painting; King Wire Partitions; Kodiak Construction, Inc.; and Basement Clothing, Inc. (See *Premier I, supra,* 136 Cal.App.4th at p. 470, fn. 2.)

*Sletten* (2002) 29 Cal.4th 82, 88–89 [124 Cal.Rptr.2d 530, 52 P.3d 703].) That conclusion was based on the *Noerr-Pennington*[2] doctrine, which "holds that '[t]hose who petition government for redress are generally immune from antitrust liability.' " (*Premier I, supra,* 136 Cal.App.4th at p. 478, quoting *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.* (1993) 508 U.S. 49, 56 [123 L.Ed.2d 611, 113 S.Ct. 1920].) We examined the jurisprudence applying *Noerr-Pennington* to bar suits based on the defendant's approach to administrative agencies and the courts. (*Premier I,* at p. 478.) The immunity has been applied to " 'virtually any tort, including unfair competition and interference with contract,' " including actions under the Cartwright Act and RICO. (*Premier I, supra,* 136 Cal.App.4th at p. 478, quoting *Ludwig v. Superior Court* (1995) 37 Cal.App.4th 8, 21, fn. 17 [43 Cal.Rptr.2d 350].) We concluded defendants had established that their activities "were taken in exercise of their First Amendment right to petition and so fall within the *Noerr-Pennington* doctrine" and thus established a probability of prevailing on this defense at trial. (*Id.* at p. 479.) We reversed the order denying the special motion to strike and awarded the moving defendants their costs and fees on appeal. (*Id.* at p. 480.) A petition for rehearing was denied and appellants' petition for review by the Supreme Court also was denied. (*Ibid.*)

On remand, seven motions for attorney fees pursuant to section 425.16, subdivision (c) were filed by the successful moving parties. Appellants opposed the motions, first arguing the trial court should take into account the merits of their underlying lawsuit in fixing fees. They also argued that fees should not be awarded for preparing the fee applications, and that fees should be denied because dismissal of the complaint pursuant to *Premier I* meant that the insurance company respondents would be able to delay or avoid paying significant amounts of workers' compensation claims and liens.

Appellants also challenged the sufficiency of the evidence submitted by the Locke Lord Bissell Brook law firm on behalf of CIGA. They argued that the fee requests on behalf of Pacific Secured Equities, Inc., doing business as Intercare Insurance Services (Intercare), ICW and Explorer[3] were duplicative and excessive because CIGA's counsel took the lead in the trial court and in the appeal. The only evidence submitted in support of the opposition was the transcript of the hearing on the special motion to strike. In their replies, counsel for respondents pointed out that appellants had not challenged the reasonableness of the rates charged nor presented evidence to contradict their declarations and billing records.

---

[2] *Eastern R. Conf. v. Noerr Motors* (1961) 365 U.S. 127 [5 L.Ed.2d 464, 81 S.Ct. 523] (*Noerr*); *Mine Workers' v. Pennington* (1965) 381 U.S. 657 [14 L.Ed.2d 626, 85 S.Ct. 1585].

[3] ICW and Explorer were jointly represented by the same counsel in this matter. We refer to them collectively as "ICW/Explorer."

At the initial hearing, the trial court granted some fee applications. As we shall explain, since appellants abandoned their appeal as to all but three respondents, we discuss the specific awards only as to those respondents. The trial court awarded Intercare $76,206. The court requested additional declarations by counsel for CIGA and ICW/Explorer to clarify the fees claimed. Supplemental declarations, oppositions, and replies were filed. At the second hearing, ICW/Explorer was awarded the amount sought, $33,295, plus interest. The trial court reduced the CIGA request by 25 percent, and awarded fees of $165,000 plus costs of $1,871.84. Judgments were entered in favor of each prevailing respondent, and the action was dismissed as to each.

Appellants appealed the fee awards in favor of CIGA, Intercare, ICW/Explorer and American All-Risk Loss Administrators. Later they appealed the fee awards in favor of Elite Personnel Services, Inc.; Select Personnel Services, Inc.; HMI Associates, Inc.; and Lehman Foods, Inc. We consolidated the appeals. In their opening brief, appellants chose to limit their appeal to the awards in favor of CIGA ($165,000 plus $1,871.84 in costs), Intercare ($76,206) and ICW/Explorer ($33,295).

## DISCUSSION

### I

A defendant who brings a successful motion to strike under section 425.16 is entitled to mandatory attorney fees. (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1131 [104 Cal.Rptr.2d 377, 17 P.3d 735] (*Ketchum*); § 425.16, subd. (c).)[4] The fee award "should ordinarily include compensation for *all* the hours *reasonably spent*, including those relating solely to the fee." (*Ketchum*, at pp. 1133, 1141, citing *Serrano v. Unruh* (1982) 32 Cal.3d 621, 624, 639 [186 Cal.Rptr. 754, 652 P.2d 985] (*Serrano IV*).) Fees may be awarded for the appeal from an order on a section 425.16 motion to strike. (*Morrow v. Los Angeles Unified School Dist.* (2007) 149 Cal.App.4th 1424, 1446 [57 Cal.Rptr.3d 885].) " '[P]adding' in the form of inefficient or duplicative efforts is not subject to compensation." (*Ketchum, supra,* 24 Cal.4th at p. 1132, quoting *Serrano v. Priest* (1977) 20 Cal.3d 25, 48 [141 Cal.Rptr. 315, 569 P.2d 1303] (*Serrano III*).)

In *Ketchum*, the court held that abuse of discretion is the appropriate standard of appellate review of a fee award under section 425.16, subdivision (c). The reason is that the " ' "experienced trial judge is the best judge of

---

[4] Section 425.16, subdivision (c) provides in pertinent part: "In any *action subject to* subdivision (b), a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs. . . ."

the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong." ' " (*Ketchum, supra*, 24 Cal.4th at p. 1132, quoting *Serrano III, supra*, 20 Cal.3d at p. 49.) " ' "While the concept 'abuse of discretion' is not easily susceptible to precise definition, the appropriate test has been enunciated in terms of whether or not the trial court exceeded ' "the bounds of reason, all of the circumstances before it being considered. . . ." ' [Citations.]" [Citation.] "A decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.' [Citations.] In the absence of a clear showing that its decision was arbitrary or irrational, a trial court should be presumed to have acted to achieve legitimate objectives and, accordingly, its discretionary determinations ought not be set aside on review." [Citation.]' (*Gouskos v. Aptos Village Garage, Inc.* (2001) 94 Cal.App.4th 754, 762 [114 Cal.Rptr.2d 558].) Accordingly, an abuse of discretion transpires if ' "the trial court exceeded the bounds of reason" ' in making its award of attorney fees. (*Dove Audio, Inc. v. Rosenfeld, Meyer & Susman* (1996) 47 Cal.App.4th 777, 785 [54 Cal.Rptr.2d 830].)" (*Maughan v. Google Technology, Inc.* (2006) 143 Cal.App.4th 1242, 1249–1250 [49 Cal.Rptr.3d 861] (*Maughan*).)

The *Ketchum* court was satisfied with the trial court's inquiry, based on its review of extensive documentation concerning the fees and lengthy oral argument: "We have no reason to doubt that the superior court conducted an independent assessment of the evidence presented." (*Ketchum, supra*, 24 Cal.4th at p. 1140.) The plaintiff in *Ketchum* argued that the trial court should have provided a reasoned explanation for the award. The Supreme Court held that it was not required to issue a statement of decision because none was requested. (*Ketchum, supra*, 24 Cal.4th at p. 1140.)

Significantly, the plaintiff in *Ketchum*, like appellants here, failed to request a statement of decision. In such circumstances, the *Ketchum* court held that standard principles of appellate review apply: " ' "All intendments and presumptions are indulged to support [the judgment] on matters as to which the record is silent, and error must be affirmatively shown." ' (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 [86 Cal.Rptr. 65, 468 P.2d 193].) As we explained in *Maria P.*: 'It is the burden of the party challenging the fee award on appeal to provide an adequate record to assess error. [Citations.] Here, [Ketchum] should have augmented the record with a settled statement of the proceeding. [Citations.] Because [he] failed to furnish an adequate record of the attorney fee proceedings, [Ketchum's] claim must be resolved against [him].' (*Maria P. v. Riles* [(1987)] 43 Cal.3d [1281,] 1295–1296 [240 Cal.Rptr. 872, 743 P.2d 932].)" (*Ketchum, supra*, 24 Cal.4th at pp. 1140–1141.)

■ The Supreme Court adopted the "lodestar adjustment method" developed in *Serrano III* and its progeny. (*Ketchum, supra,* 24 Cal.4th at p. 1131.) "Under *Serrano III*, the lodestar is the basic fee for comparable legal services in the community; it may be adjusted by the court based on factors including, as relevant herein, (1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award. (*Serrano III, supra,* 20 Cal.3d at p. 49.) The purpose of such adjustment is to fix a fee at the fair market value for the particular action." (*Ketchum, supra,* at p. 1132.) No enhancement is sought by respondents here. They seek only the fees paid by their clients.

Under *Ketchum,* the lodestar is based on the prevailing hourly rates for comparable legal services in the community. The declarations of the moving defendants set out their own billing rates, but are silent as to the prevailing rates in the community. We need not address this apparent omission because, in the trial court proceedings, plaintiffs expressly agreed not to challenge the hourly rates, focusing instead on the number of hours billed. On appeal, appellants again concede the reasonableness of the hourly rates charged by counsel for respondents.

Citing the collective claim of 1,200 hours worked by counsel for all respondents, appellants assert: "Under any standard of review, including abuse of discretion, the fees awarded to Respondents are clearly wrong and based on grossly excessive, unnecessary, duplicative and an unreasonable number of claimed work hours." They point out that the same issues were addressed in the section 425.16 motion and on appeal. No citation to the record is provided to support this assertion. We address each challenge separately.

## A. *Fees Claimed*

Counsel for CIGA claimed fees for the work of four attorneys and a paralegal at the trial and appellate levels. They claimed a total of $70,750.50 for trial work, $132,739.10 for appellate work, and $16,419.90 for the fee application. The total fees claimed were $219,909.50. Of this, William Davis, the lead counsel for the joint defense, billed $166,504. Counsel for Intercare claimed fees totaling $76,206, and counsel for ICW/Explorer claimed a total of $15,945 for trial court proceedings, $13,950 for appellate proceedings, and $3,400 for the fee application, for a total of $33,295.

## B. *Joint Defense*

Appellants argue that the hours respondents claim are excessive. Before we examine that claim, it is necessary to understand the nature of the joint

defense as explained in the uncontradicted declaration submitted by Mr. Davis in support of the fee motion. Mr. Davis explained that various tasks were divided within the defense group, and that CIGA undertook a principal role because it is the subject of the major portion (in numbers and amounts) of the challenged WCAB lien claims. Three firms took the lead in preparing the joint section 425.16 motion to strike and the related joint demurrer which was incorporated into the motion to strike. These were Mr. Davis's firm (now Locke Lord Bissell & Liddell); Sheppard, Mullin, Richter & Hampton (representing American Casualty Company of Reading, Pennsylvania, which settled on the eve of the hearing on the motion to strike); and Pillsbury Winthrop Shaw Pittman (representing Intercare).

Intercare's counsel was responsible for researching and drafting portions of the motion to strike and the appeal regarding the litigation privilege of Civil Code section 47, subdivision (b) and the *Noerr-Pennington* doctrine. As we have noted, that doctrine was the basis for our decision in *Premier I*, reversing the trial court's denial of the motion to strike.

Mr. Davis declared that the firm of Heggeness & Sweet, representing ICW/Explorer, "undertook to prepare and did prepare and assemble the necessary declarations and voluminous exhibits filed and submitted in support of the SLAPP motion respecting, in particular, the nature and history of the proceedings before the Workers' Compensation Appeals Board (WCAB). Those proceedings, as determined by the Court of Appeal, lay at the heart of the petitioning activities that both triggered the SLAPP motion statute and supported the ultimate determination by the Court of Appeal that defendants' conduct was privileged."

The Davis declaration provided a brief description of both the common issues and the issues individual to CIGA. The *Noerr-Pennington* doctrine was among the common grounds raised. Since there were additional issues peculiar to CIGA which did not apply to the other defendants, Mr. Davis's firm also prepared a separate demurrer on behalf of CIGA regarding those issues. This demurrer was incorporated into the section 425.16 motion as an additional basis for dismissal. By mutual agreement of the defendants, Mr. Davis took the lead role in arguing the special motion to strike in the trial court.

Mr. Davis's firm and Pillsbury took principal responsibility for preparing and filing the respondents' joint brief on appeal. In addition, Mr. Davis's firm prepared a separate respondent's brief on behalf of CIGA regarding additional issues peculiar to it. Other counsel contributed comments and revisions to the joint brief. Counsel for respondents also prepared a reply brief and a motion for judicial notice. Mr. Davis took the lead in arguing the appeal before us.

Respondents prepared a joint answer to a petition for review filed by appellants with the California Supreme Court after we issued our opinion in *Premier I.*

As we have discussed, appellants failed to file any declarations in support of their opposition to the fee motions. They provided no evidence to contradict Mr. Davis's description of the division of labor among respondents or the collaboration on the preparation of the trial court and appellate pleadings relating to the special motion to strike. Nor did they provide an evidentiary challenge to the fees claimed.

## C. *Trial Court Fees*

Appellants argue, without citation to any evidence, that the 217 hours spent by CIGA's counsel were "extreme by any measure." They point out that this time, together with the 127.9 hours spent by counsel for Intercare on the motion to strike, adds up to more than 345 hours spent by two of the lead firms working on the same motion. They conclude: "There can be no question but that the hours claimed are unreasonably excessive."

Since appellants submitted no evidence that the hours claimed by counsel were excessive, they appear to be asking that we declare as a matter of law that the hours were unreasonable. In support of this argument, they rely upon *Maughan, supra,* 143 Cal.App.4th 1242. In that case, the Court of Appeal found no abuse of discretion in a trial court order reducing claimed fees of $112,288.63 to $23,000. (*Id.* at p. 1248.) The trial court judge said: " 'This Court routinely deals with attorneys' fee requests in complex cases and other contexts such as in class actions and discovery motions. As such, this Court has experience with how much time attorneys should be spending and typically do spend on difficult and complex matters. This court believes that a reasonable time spent on the [anti-]*SLAPP motion and the instant motion* [for fees and costs] is, as [plaintiffs] have suggested, approximately 50 hours or one attorney work week. Averaging the billing rate of the two attorneys who worked on the motion results in $425 per hour. $425 per hour multiplied by 50 hours amounts to $21,250. Adding a reasonable figure for costs the Court believes that $23,000 is a generous and reasonable award of attorneys' fees and costs given the circumstances in this action.' " (*Id.* at p. 1249.)

In affirming the order, the majority in *Maughan* emphasized the abuse of discretion standard of review. It concluded that defendant Google had failed to show that the trial court's reduced award was an abuse of discretion, and that it essentially argued instead that the order was not supported by substantial evidence. (*Maughan, supra,* 143 Cal.App.4th at pp. 1249–1252.) It noted that the trial court relied on a declaration by counsel for plaintiffs stating that his

firm spent a total of 50 hours on the matter. The trial court also observed that counsel for Google were experienced in the relevant procedural and substantive law. (*Id.* at p. 1251.)

■ Appellants invite us to adopt the 50-hour figure used by the trial court in *Maughan* as an upper limit for the hours allowed on a section 425.16 motion to strike, apparently on the notion that if 50 hours is right for that case it must be right for this one as well. We decline the invitation as contrary to the guidelines set by the Supreme Court in *Ketchum.* As we have discussed, each fee application under section 425.16, subdivision (c) must be assessed on its own merits according to the principles discussed in *Ketchum,* taking into account what is reasonable under the circumstances. (*Ketchum, supra,* 24 Cal.4th at p. 1132.) A broad rule adopting a 50-hour limit would be contrary to this case-by-case approach. It also would conflict with application of the deferential abuse of discretion standard we apply on appeal. A limitation such as that suggested by appellants would deprive the trial court of the full range of discretion envisioned by the *Ketchum* court.

The significance of *Maughan* to this case is that the Court of Appeal applied the abuse of discretion standard and did not substitute its judgment for that of the trial court. The experienced trial court judge in *Maughan* was familiar with the issues. The judge who awarded fees in our case also heard the proceedings on the special motion to strike and the related demurrers, and was familiar with the complex issues raised. As we observed in *Premier I,* appellants' complaint arose out of a complex factual setting involving many liens and claims before the WCAB. Appellants attempt to characterize their lawsuit as "straightforward." We understand this to mean that the issues before the court and on appeal were not complex. So understood, we do not agree. The complaint exposed the 21 defendants to $45 million in damages and wide-ranging injunctive relief. We devoted over five pages of our decision in *Premier I* to whether the complaint came within section 425.16. (*Premier I, supra,* 136 Cal.App.4th at pp. 472–477.) Since we concluded that the *Noerr-Pennington* doctrine provided defendants a complete defense to the action, we did not reach the other defenses and legal issues briefed by respondents on the second prong of the anti-SLAPP analysis. But those issues were researched and briefed. In addition, appellants brought an unsuccessful petition for rehearing before us and a petition for review which was denied by the Supreme Court. This was not a "straightforward" matter.

Appellants also argue that the hours claimed by CIGA and Intercare represent a significant duplication of effort, which is not compensable under *Ketchum, supra,* 24 Cal.4th at page 1132. They point to hours spent by these two firms in researching legal issues—60 hours by counsel for CIGA and 20 hours by counsel for Intercare. Counsel for CIGA spent 100 hours drafting

and revising the motion, while counsel for Intercare claimed 50 hours for drafting and revising the joint motion. We have reviewed the exhibits constituting the billing records of respondents. They demonstrate that counsel for CIGA were researching issues such as the False Claims Act (Gov. Code, § 12650 et seq.); insurance statutes; the McCarran-Ferguson Act (15 U.S.C. § 1011 et seq.); privilege; RICO; immunity for CIGA; the Cartwright Act claims; and Business and Professions Code section 17200. In contrast, the bills submitted by counsel for Intercare reflect the division of labor described by Mr. Davis in his declaration. Intercare's counsel researched the litigation privilege under Civil Code section 47, the *Noerr-Pennington* doctrine, and workers' compensation exclusivity.

■ Appellants challenge time spent on conference calls, reviewing e-mails, and preparing for the hearings as duplicative. They assert that their claim of duplicative effort is confirmed by the declaration by counsel for ICW/Explorer. In the cited passage, counsel describes the collaborative process of drafting the joint pleadings at the trial and appellate levels. The collaborative process also was described in a declaration by counsel for Intercare. "The hours reasonably expended strategizing, researching and briefing the SLAPP motion to strike and subsequent successful appeal reflect the nature of the litigation, the complexity of the motion, and the uniqueness of SLAPP motion practice." Ten of the 21 defendants joined in the section 425.16 motion. This was more efficient than having 10 separate motions filed. Collaboration does not necessarily amount to duplication that is not compensable under section 425.16, subdivision (c).

Appellants have presented no evidence to refute the declarations by counsel for respondents explaining that the time spent on drafting the motion reflected the division of labor and the collaborative nature of the joint defense. We are presented with no evidentiary basis to second-guess the conclusion of the trial court that the collaboration on joint documents was not duplicative; we have no basis to reverse that decision as an abuse of discretion. (See *Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.* (2003) 106 Cal.App.4th 1219, 1248 [132 Cal.Rptr.2d 57] [argument that billing is duplicative and unreasonable, unsupported by citation to record or explanation of which fees were challenged gives no basis to disturb trial court's discretionary fee ruling]; *Braun v. Chronicle Publishing Co.* (1997) 52 Cal.App.4th 1036, 1052–1053 [61 Cal.Rptr.2d 58] [absent evidence that fee award was based on unnecessary or duplicative work, the award will be affirmed]; *Church of Scientology v. Wollersheim* (1996) 42 Cal.App.4th 628, 659 [49 Cal.Rptr.2d 620], disapproved on other grounds in *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 68, fn. 5 [124 Cal.Rptr.2d 507, 52 P.3d 685] [fee award affirmed where plaintiff has not presented any evidence in the record that the award was based upon unnecessary or duplicative work or any other improper basis].)

Appellants minimize the contribution made by counsel for ICW/Explorer, but cite nothing to contradict Clifford Sweet's declaration establishing the significant contribution to the factual record made by his firm. Appellants assert: "A review of the record reflects that while there were a number of exhibits attached and a discussion of the WCAB factual history, ICW/Explorer's effort could not reasonably merit approximately 130 hours of attorney time." No citation to the record is presented to support this assertion. Appellants attempted to augment the record on appeal with the trial court pleadings on the section 425.16 motion, but that request was denied when respondents pointed out that the documents had not been presented to the trial court on the fee motion. Since no evidence supports appellants' assertion, we may not overturn the trial court's exercise of discretion on that basis. (*Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.,* *supra,* 106 Cal.App.4th at p. 1248.)

Similarly, appellants have not refuted respondents' declarations stating that only fees for work related to the special motion to strike were claimed. For example, counsel for Intercare explained: "Some of the time spent on the demurrer is included [in the fee application] where those issues were 'plugged in' or were equally applicable to the SLAPP motion." Since appellants chose not to submit the pleadings drafted by respondents to the trial court in support of their opposition to the motion to strike, we have no record on appeal which would allow us to compare the issues briefed in the various motions to verify respondents' claims that there was an overlap of issues. It was appellants' duty to present an adequate record on appeal to support their claim of error; they have not done so.

D. *Appellate Fees*

■ The challenges made by appellants to the fees incurred on the appeal are similar to their arguments about the trial court fees, and suffer from the same lack of supporting evidence. Appellants complain that each respondent claimed fees for the joint pleadings on appeal, suggesting that much of this work must have been duplicative and unnecessary. They also argue that the fees on appeal should have been reduced because the issues on appeal are the same as the issues researched and briefed in the trial court. But appellants submitted no evidence to contradict the declarations and billing records submitted by respondents to establish that this work was performed in connection with the collaborative appellate briefing. Once again, appellants have given us no basis to overturn the trial court's exercise of discretion.

Respondents supported their fee requests with declarations describing the joint defense and the division of labor, with billing records to establish the hours of work. Appellants had two options to oppose such a showing: attack

the itemized billings with evidence that the fees claimed were not appropriate, or obtain the declaration of an attorney with expertise in the procedural and substantive law to demonstrate that the fees claimed were unreasonable. They did neither. As we have discussed, the principles of appellate review required appellants to affirmatively demonstrate error to overcome the presumptions in favor of the trial court's ruling: " ' "All intendments and presumptions are indulged to support [the judgment] on matters as to which the record is silent, and error must be affirmatively shown." ' " (*Ketchum, supra*, 24 Cal.4th at pp. 1140–1141.) Appellants have presented no record which would warrant overturning the trial court's exercise of discretion.

There is a further reason to uphold the trial court ruling. Intercare and ICW/Explorer contend that appellants forfeited many of the specific challenges they make on appeal because they failed to raise them in the trial court. For example, in their opening brief, appellants argue that ICW/Explorer claimed numerous hours for work unrelated to the section 425.16 motion, citing instances. These specific claims were not made in the trial court, either in opposition to the supplemental declaration filed by ICW/Explorer or at the hearing on the motion. Rather, at the second hearing, counsel for appellant asserted: "I'm not going to go through every single one of [the] bills and all the rates."

■ In challenging attorney fees as excessive because too many hours of work are claimed, it is the burden of the challenging party to point to the specific items challenged, with a sufficient argument and citations to the evidence. General arguments that fees claimed are excessive, duplicative, or unrelated do not suffice. Failure to raise specific challenges in the trial court forfeits the claim on appeal. " ' "[I]t is fundamental that a reviewing court will ordinarily not consider claims made for the first time on appeal which could have been but were not presented to the trial court." Thus, "we ignore arguments, authority, and facts not presented and litigated in the trial court. Generally, issues raised for the first time on appeal which were not litigated in the trial court are waived. [Citations.]" ' (*Newton v. Clemons* (2003) 110 Cal.App.4th 1, 11 [1 Cal.Rptr.3d 90], fns. omitted.) 'Appellate courts are loath to reverse a judgment on grounds that the opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider. [Citation.] In our adversarial system, each party has the obligation to raise any issue or infirmity that might subject the ensuing judgment to attack. . . .' (*JRS Products, Inc. v. Matsushita Electric Corp. of America* (2004) 115 Cal.App.4th 168, 178 [8 Cal.Rptr.3d 840].)" (*Kashmiri v. Regents of University of California* (2007) 156 Cal.App.4th 809, 830 [67 Cal.Rptr.3d 635].)

By failing to do that here, appellants have forfeited these claims on appeal.

## II

Appellants expressly abandoned their appeal as to HMI Associates, Inc., Lehman Foods, Inc., Elite Personnel Services, Inc., and American All-Risk Loss Administrators. We therefore dismiss the appeal as to those respondents.

## DISPOSITION

The awards of fees and costs to respondents CIGA, Intercare, and ICW/Explorer are affirmed and they are to have their costs on appeal. The appeal is dismissed as to respondents HMI Associates, Inc., Lehman Foods, Inc., Elite Personnel Services, Inc., and American All-Risk Loss Administrators. These respondents are to bear their own costs on appeal.

Willhite, J., and Manella, J., concurred.