Filed 2/13/14  DEI v. Capital Partners Services CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| DEI, LLC, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> CAPITAL PARTNERS SERVICES CORP., <br><br> Defendant and Respondent. | D062553 <br><br><br> (Super. Ct. No. 37-2011-00052845 -CU-BC-NC) |

APPEAL from a judgment of the Superior Court of San Diego County, Jacqueline M. Stern, Judge.  Affirmed.

Miller & Steele and Robert M. Steele for Plaintiff and Appellant.

Solomon Ward Seidenwurm & Smith, Daniel E. Gardenswartz, Matthew J. Wiles for Defendant and Respondent.

Plaintiff and appellant DEI, LLC (DEI) appeals from a judgment awarding $134,092.00 in attorney fees to defendant and respondent Capital Partners Services Corp.

(Capital) following entry of summary judgment in Capital's favor. DEI contends the trial court abused its discretion in calculating the award by failing to determine an initial lodestar figure, rendered it impossible to determine whether the court had excluded fees for time not reasonably expended in the litigation.[1] We affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

In March 2012, Capital obtained summary judgment in its favor on DEI's breach of contract complaint filed a year earlier in March 2011. Thereafter, Capital moved for an award of $153,527.50 in mandatory attorney fees under Code of Civil Procedure section 1032, Civil Code section 1717, and the sublease contract at issue. Capital argued it was entitled to such fees as the prevailing party, and the amount requested was reasonable based on the lodestar calculation, the nature of the litigation and amount at issue, the difficulty in handling and resolving the dispute, and the time its counsel necessarily incurred.

Specifically, as to the initial lodestar figure, Capital pointed out it had principally used two attorneys on the matter, one partner and one associate, with over 25 years combined experience and a $309 blended hourly rate. It multiplied that hourly rate by the number of hours the attorneys spent on the case, adding the sums to similarly calculated fees of two other partners, one paralegal and two case assistants. Capital stated it had

---

[1] Capital has moved to partially dismiss DEI's appeal as untimely to the extent it identified the judgment apart from the postjudgment attorney fee order. DEI responded that its notice of appeal was overinclusive and it does not challenge the judgment. In view of the concession, we deny Capital's motion to dismiss, as well as its request for judicial notice in support of that motion, as moot.

spent 510.9 hours on the case. As for the nature of the action, Capital pointed out DEI's breach of sublease action was preceded by another lawsuit filed by DEI against the direct lessee, RMH. After DEI obtained a default judgment against some defendants in that case, it sued Capital for breach of the sublease, seeking $631,806 in damages including certain amounts of rent it had claimed from the defendants in the RMH litigation, interest and attorney fees. Capital asserted its counsel found it difficult to understand DEI's theories in view of its bare judicial council form pleading and the fact Capital had paid its rent. In April 2011, Capital's counsel attempted to resolve the matter by letter and other settlement offers, which DEI assertedly ignored.

Capital presented redacted attorney invoices, as well as a declaration of its counsel, Daniel Gardenswartz, a partner at Solomon, Ward, Seidenwurm & Smith, LLP (Solomon Ward). In his declaration, Gardenswartz averred, in addition to some of the foregoing matters, that the parties collectively served 200 discovery requests in the DEI/Capital case, and as a consequence of that and DEI's other discovery efforts, the parties engaged in multiple meet and confer efforts. He stated that Capital was forced to review boxes of documents obtained from the RMH attorneys and oppose a DEI motion to compel discovery. Gardenswartz asserted that the parties each took one deposition in the case and made lengthy summary judgment motions, with attendant opposition and reply papers. Capital argued that all of its fees were reasonably necessary for the defense of the case, which involved complicated legal and factual defenses given the unique liability theories asserted by DEI and the manner in which it litigated the case.

3

DEI opposed the motion, providing a supporting declaration from its counsel, Robert Steele. DEI did not challenge Capital's prevailing party status or the reasonableness of counsel's blended hourly rate. It argued Solomon Ward had overstaffed the case, resulting in bills with wasteful, inefficient, and duplicative entries. It asserted that over $41,000 of the fees were spent on attorney conferences and email communications, over $6,800 in connection with an unrelated lawsuit, and over $3,300 for a demurrer that Capital did not file. It argued that the use of block billing made it impossible to determine the amount of time billed by Solomon Ward, including for discovery and the summary judgment motions. DEI argued that $24,640.80 was a reasonable attorney fee award.

In reply, Capital asserted numerous evidentiary objections to Steele's declaration, including to a chart Steele had prepared assertedly reflecting the conferences and internal communications between Solomon Ward attorneys and staff. It also submitted a lengthy declaration from associate Matthew Wiles, who detailed DEI's vigorous litigation posture, Capital's efforts on the case particularly relating to discovery, and the time spent on Capital's attorney fee motion.

In July 2012, the trial court tentatively granted the motion. Ruling on Capital's evidentiary objections, it found Capital was the prevailing party and, based on its review of the billing statements, the Gardenswartz declaration, and admissible portions of

4

Steele's declaration,[2] awarded Capital $134,092 in attorney fees, encompassing fees for the motion and reply brief before it. At oral argument on the matter, DEI's counsel pressed the court to explain its methodology in reducing the requested fees. The court gave an example of how it handled the multiple attorney conferences: that it took an across-the-board 10 percent reduction, excising $15,352.75, for "excessive conferencing and internal meeting between and amongst the attorneys." It otherwise declined to further explain the basis for its ruling, pointing out it had reduced the fees for other apparently unrelated tasks and stating that the fees it was awarding were reasonable given the circumstances, its knowledge of the case and its complexity. The court confirmed its tentative ruling. DEI filed the present appeal.

DISCUSSION

I. *Legal Principles and Standard of Review*

Attorney fee awards should be "fully compensatory"; absent circumstances rendering the award unjust, parties who qualify for a fee should recover compensation for "*all* the hours *reasonably spent*" in litigating an action to a successful conclusion. (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1133; *Horsford v. Board of Trustees Of California State University* (2005) 132 Cal.App.4th 359, 394; *Meister v. Regents of University of California* (1998) 67 Cal.App.4th 437, 447 [" ' "[U]nless special circumstances would render such an award unjust," ' 'parties who qualify for a fee should

---

2    Neither party mentions or disputes any of the trial court's evidentiary rulings. DEI does not challenge Capital's prevailing party status on appeal.

5

recover for all hours *reasonably spent . . . .'* "], quoting *Serrano v. Unruh* (1982) 32 Cal.3d 621, 633, 639; see also *Hensley v. Eckerhart* (1983) 461 U.S. 424, 430 [counsel for prevailing parties should be paid for all time reasonably expended on a matter].)

" '[T]he fee setting inquiry in California ordinarily begins with the "lodestar," i.e., the number of hours reasonably expended multiplied by the reasonable hourly rate. "California courts have consistently held that a computation of time spent on a case and the reasonable value of that time is fundamental to a determination of an appropriate attorneys' fee award." [Citation.] The reasonable hourly rate is that prevailing in the community for similar work. [Citations.] The lodestar figure may then be adjusted, based on consideration of factors specific to the case, in order to fix the fee at the fair market value for the legal services provided. [Citation.] Such an approach anchors the trial court's analysis to an objective determination of the value of the attorney's services, ensuring that the amount awarded is not arbitrary.' " (*Heritage Pacific Financial, LLC v. Monroy* (2013) 215 Cal.App.4th 972, 1004, quoting *PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095 (*PLCM*).)[3] Because the lodestar method vests the court with discretion to decide which of the attorney hours expended were reasonably spent on the litigation, when an appellant challenges an award as excessive, it is his or her burden "to

---

[3] "The lodestar 'may be adjusted by the court based on factors including . . . (1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, [and] (4) the contingent nature of the fee award. [Citation.] The purpose of such adjustment is to fix a fee at the fair market value for the particular action.' " (*Donovan v. Poway Unified School Dist.* (2008) 167 Cal.App.4th 567, 628, quoting *Ketchum v. Moses*, *supra*, 24 Cal.4th at p. 1132.)

point to the specific items challenged, with a sufficient argument and citations to the evidence.  General arguments that fees claimed are excessive, duplicative, or unrelated do not suffice."  (*Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.* (2008) 163 Cal.App.4th 550, 564.)

"We review an order granting or denying fees for an abuse of discretion. [Citation.]  'Because the "experienced trial judge is the best judge of the value of professional services rendered in his court," we will not disturb the trial court's decision unless convinced that it is clearly wrong, meaning that it is an abuse of discretion. [Citations.]  However, " '[t]he scope of discretion always resides in the particular law being applied, i.e., in the "legal principles governing the subject of [the] action . . . ." Action that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an "abuse" of discretion.' "  [Citations.]  When the record is unclear whether the trial court's award of attorney fees is consistent with the applicable legal principles, we may reverse the award and remand the case to the trial court for further consideration and amplification of its reasoning.' "  (*Graciano v. Robinson Ford Sales, Inc.* (2006) 144 Cal.App.4th 140, 148-149; see *PLCM*, *supra*, 22 Cal.4th at p. 1095 [trial court has broad authority to determine the amount of a reasonable fee under Civil Code section 1717].)  But, the court's determination "is necessarily ad hoc and must be resolved on the particular circumstances of each case." (*Meister v. Regents of University of California*, *supra*, 67 Cal.App.4th at p. 452.)

In view of the court's broad authority in this area, our review is " 'highly deferential' " of its decision.  (*Ventura v. ABM Industries Incorporated* (2012) 212

Cal.App.4th 258, 275.)  In keeping with settled appellate principles, we presume the court considered all appropriate factors in selecting a multiplier and applying it to the lodestar figure.  (*Ramos v. Countrywide Home Loans, Inc.* (2000) 82 Cal.App.4th 615, 621.)  The reviewing court will interfere with a court's determination of reasonable attorney fees " 'only where there has been a manifest abuse of discretion.' "  (*PLCM*, *supra*, 22 Cal.4th at p. 1095.)

II. *The Trial Court Did Not Manifestly Abuse its Discretion in Awarding Capital*
*$134,092 in Attorney Fees*

DEI contends the trial court abused its discretion by failing to calculate and determine an initial lodestar figure for setting the attorney fee award.  It discusses general principles pertaining to the touchstone or lodestar figure, then asserts:  "In rendering its decision, the trial court failed to set forth the reasonable number of hours or the reasonable hourly rate it applied in calculating the attorney fees.  When asked to explain the basis for its calculation the trial court declined stating it was not required to explain its reasoning."  Citing *Hensley v. Eckerhart*, *supra*, 461 U.S. 424, *Harman v. City and County of San Francisco* (2006) 136 Cal.App.4th 1279, 1310, and *Christian Research Institute v. Alnor* (2008) 165 Cal.App.4th 1315, DEI argues that due to the court's failure to set out an initial lodestar and Solomon Ward's use of "block billing," it is not possible to determine whether the court excluded hours that were not reasonably expended, that is, time that was excessive, redundant or otherwise unnecessary, "nonproductive" time.  According to DEI, by stating it had made an across-the-board reduction, the court confirmed it had not calculated a lodestar and thus its ruling "transgressed from the

8

confines of the applicable legal principles . . . ."  DEI maintains that on the record before us, we "cannot infer the trial court performed any initial lodestar calculation . . . ."

We reject these arguments.  First, DEI suggests that the trial court somehow erred by declining to explain its specific reasoning in calculating reasonable attorneys fees.  However, the court was not required to explain its decision, or even expressly acknowledge the lodestar amount.  (*Ketchum v. Moses*, *supra*, 24 Cal.4th at p. 1140; *Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44, 67; see also *In re Marriage of Falcone and Fyke* (2012) 203 Cal.App.4th 964, 981; *Ventura v. ABM Industries Incorporated*, *supra*, 212 Cal.App.4th at p. 275.)  And, " ' "[a]ll intendments and presumptions are indulged to support [the judgment] on matters as to which the record is silent, and error must be affirmatively shown." ' "  (*Ketchum*, at p. 1140.)

Second, the hourly rate used by Solomon Ward for the vast majority of the attorney hours spent (468.7 of the 510.9 claimed) was the $309 blended rate, and, as the only hourly rate proposed for Gardenswartz's and Wiles's time, it is reasonable to infer that the trial court applied this hourly rate as the multiplier in calculating the award.  The rate should be the "hourly prevailing rate for private attorneys in the community conducting noncontingent litigation of the same type," or the " ' "amount to which attorneys of like skill in the area would typically be entitled." ' "  (*Ketchum v. Moses*, *supra*, 24 Cal.4th at p. 1133, italics omitted.)  DEI does not argue that the $309 hourly rate is excessive, or advance any other challenge to the reasonableness of this rate.

Third, we may reasonably infer the trial court was fully aware of, and utilized the lodestar method because Capital expressly did so in its motion seeking to recover its fees,

9

placing that method directly before the court. That is, Capital multiplied the relevant hourly rates by the total time Solomon Ward attorneys and other staff spent on the matter, 510.9 hours, which it contended was reasonably expended. The court took this amount, and adjusted it by a percentage reduction to account for duplicative effort. The fact the court made such an adjustment does not prove that it used some different, unauthorized, method of calculation, but rather, demonstrates that it knew it was to pass upon the value of the legal services in the case, on which it had its own expertise. (*PLCM*, *supra*, 22 Cal.4th at p. 1096; see *Doppes v. Bentley Motors, Inc.* (2009) 174 Cal.App.4th 967, 999-1000 [trial court's reduction of attorney fee award by 25 percent for " 'general excessive time billing' " was not an abuse of discretion]; *Gorman v. Tassajara Development Corp.*, *supra*, 178 Cal.App.4th at p. 100 ["Instead of calculating a total number of excessive hours, the trial court might have applied a negative multiplier"].) The rationale of the trial court is clear. Indeed, "[a]s the trier of fact, it is the trial court's role to examine the evidence, and we presume the court performed its duty." (*Christian Research Institute v. Alnor*, *supra*, 165 Cal.App.4th at p. 1325.) Here, as in *Alnor*, "the record amply demonstrates the trial court's familiarity with [Capital's] billing submissions." (*Id*. at p. 1324.) The trial court here gave significant consideration to the issue of duplicative effort: it expressly stated it had taken "excessive notes" about the billings, and observed that in some of them, "attorneys had met with each other two and three times a day and charged for each conference." Hence, the court adjusted the billing by 10 percent for "excessive conferencing and internal meetings between and amongst the attorneys."

10

There is no indication the court's extensive review deviated from a proper lodestar calculation.

Further, this record shows the court applied proper considerations in deciding the "number of hours reasonably expended" aspect of its lodestar calculation. In *Ketchum v. Moses*, the court explained: "In referring to '*reasonable'* compensation, we indicated that trial courts must carefully review attorney documentation of hours expended; 'padding' in the form of inefficient or duplicative efforts is not subject to compensation." (*Ketchum v. Moses*, *supra*, 24 Cal.4th at p. 1132; *Christian Research Institute v. Alnor*, *supra*, 165 Cal.App.4th at p. 1321.) In *Harman v. City and County of San Francisco*, *supra*, 136 Cal.App.4th 1279 the court analyzed the considerations relevant to this initial lodestar determination by looking to *Hensley v. Eckerhart*, *supra*, 461 U.S. 424, in which the court "instruct[ed] that the initial lodestar calculation should exclude 'hours that were not reasonably expended' " and drew an analogy to private billing practices: " 'Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission. "In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." ' " (*Harman v. City and County of San Francisco*, at p. 1310, quoting *Hensley v. Eckerhart*, at p. 434.) By scrutinizing Solomon Ward's billings for duplication and excessive or redundant efforts and

11

exercising its discretion to adjust the time accordingly, the court manifestly met this standard.

Fourth, we are not persuaded by DEI's argument that Solomon Ward's use of so-called block billing "obscured both the nature of the work and the amount billed for the work claimed." "[B]lock billing is not objectionable 'per se,' " though it may "increase the risk that the trial court, in a reasonable exercise of its discretion, will discount a fee request." (*Jaramillo v. County of Orange* (2011) 200 Cal.App.4th 811, 830.) In *Jaramillo*, the court pointed out that block billing is particularly problematic in cases where there is a need to separate out work that qualifies for compensation from work that does not. (*Ibid*.) This is not such a case, as Capital prevailed on the single breach of contract cause of action asserted by DEI. Thus, there was no need for counsel to separate out covered from uncovered work. Further, though DEI complains that many of the bills reflect internal conferences and communications between attorneys,[4] the trial court acknowledged it had undertaken a detailed review of the records for those types of entries, and, as indicated above, ultimately reduced the fee request by 10 percent, cutting the total fee request by $15,352.75 for the unnecessary work. DEI otherwise does not identify a single entry in Solomon Ward's billing records that is so vague as to make it impossible to audit the reasonableness of the fees requested, and it has not met its burden

---

4    DEI points out its counsel conducted an extensive analysis of the Solomon Ward billing records with detailed charts and had assertedly identified over $41,400 in internal conferences or internal communications. However, as Capital points out, the trial court sustained Capital's objections to this evidence, and excluded those portions of counsel's declaration, as well as his charts, from its consideration. DEI does not challenge the court's evidentiary rulings.

to show error as a result of the manner of billing. (*Ketchum v. Moses*, *supra*, 24 Cal.4th at pp. 1140-1141 [it is the appellate burden of party challenging the fee award to provide an adequate record to assess error].) To the contrary, our independent review of the records submitted in support of Capital's attorney fee motion confirms that the entries are quite detailed, and the task descriptions, though organized in daily blocks, reasonably relate to the total number of hours billed for the block of tasks. Thus, this is not a situation, as in *Christian Research Institute v. Alnor*, *supra*, 165 Cal.App.4th 1315, where the request for fees was limited to those incurred on an anti-SLAPP motion, but included nonrecoverable and vague items such as obtaining unspecified " 'numerous court documents,' " and attending a case management conference. (*Id*. at p. 1325.) In this case, the trial court had ample discretion to accept Solomon Ward's entries in making its order. (*Jaramillo*, 200 Cal.App.4th at p. 830.)

In sum, DEI has not convinced us that the trial court's decision was clearly wrong. Capital provided the court with declarations and ample documentation setting forth its attorneys' hourly rates, the reasonableness of those rates, the work performed, the time it took for many of the tasks, the reasonableness of those tasks, and the fees and expenses incurred. Having presided over the case, the court was familiar with the action and DEI's efforts in litigating it. " 'A [plaintiff] " 'cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the [successful defendant] in response.' " ' " (*Peak-Las Positas Partners v. Bollag* (2009) 172 Cal.App.4th 101, 114.) The court had discretion to award the lodestar amount in its entirety, but on a considered analysis

13

exercised its discretion to reduce the award by over $21,000.  DEI has not persuaded us

that the fee award is excessive or exceeds the bounds of reason.  (*Ibid*.)


DISPOSITION

The judgment awarding $134,092.00 in attorney fees to Capital Partners Services

Corp. is affirmed.


O'ROURKE, J.

WE CONCUR:


HUFFMAN, Acting P. J.


NARES, J.